**UNITED STATES of America, Plaintiff,**

v.

**William Paul FREIWALD, Jr., Defendant.**

**No. CR 86–854–(B)KN.**

United States District Court, C.D. California.

June 8, 1987.

---

David A. Katz, Asst. U.S. Atty., Major Frauds Unit, Los Angeles, Cal., for plaintiff.

John P. Martin, Deputy Federal Public Defender, Los Angeles, Cal., for defendant.

### ORDER

KENYON, District Judge.

#### I

The Court, having considered defendant's Motion to Suppress Evidence and Statements, the papers filed by both parties, and oral argument on this motion, hereby orders that defendant's motion is denied.

It appears to this Court that Agent Edwards had probable cause to enter and search defendant's room prior to apprehending the defendant. Furthermore, it appears that there were sufficient exigent circumstances present to allow for a warrantless search of the premises.

#### II

United States Secret Service Special Agent Keith Edwards is assigned to the Protective Intelligence Squad of the Los Angeles Field Office. He is responsible for investigating assassination threats on the life of the President of the United States.

On August 28, 1986, John Patton, a social worker at a Los Angeles County mental health center on Hollywood Boulevard in Los Angeles telephoned the Los Angeles Field Office to warn them that defendant had just stated to him: "I'm going to shoot the President and his wife." Mr. Patton said that defendant was no longer at the center, having driven away, and he gave defendant's address as 5473 Santa Monica Boulevard, Room 405, in Los Angeles.

This threat and the address were relayed to a special agent assigned to the protective intelligence advance for the Reagans' visit to Los Angeles. The President and his wife were then at the Century Plaza Hotel in Los Angeles, having arrived two days earlier.

This special agent then requested Agent Edwards to investigate the threat. Edwards immediately went to 5473 Santa Monica Boulevard, and found that defendant was not home. His whereabouts were unknown.

Agent Edwards, based on the above information and his training and experience, had formed the judgment that defendant's threat to kill the President and his wife was serious and unqualified, and that it would be irresponsible not to search defendant's room immediately in order to advise his fellow agents (whom he knew to be nearby protecting the President) whether or not a plan to assassinate the President and/or his wife was then unfolding. He believed that an emergency existed, and that a search of the room was necessary before he would have time to obtain a warrant.

He then obtained a passkey from the manager, entered defendant's room with another officer and searched. He did not

seize anything, disturb the contents of the room or leave any signs of entry.

After leaving the room, the agents continued their efforts to locate defendant. At about 8:15 p.m., they re-entered 5473 Santa Monica Boulevard.

As they approached defendant's room, they saw him speaking with another man in that man's room. They asked defendant if they could speak with him privately. He agreed and led the agents into his room. Defendant was not restrained and the agents did not draw weapons or intimidate him in any way.

Defendant signed a waiver of *Miranda* rights, and wrote out a consent to search on the reverse side. Defendant had no problems reading English or any other impediment to understanding that he was consenting to a search of his room. Defendant was then asked questions in a polite, matter of fact tone and he answered in the same tone.

Just before the search actually commenced, he threatened to take the President's life.

Agent Edwards then believed it wise to, and did, handcuff defendant, explaining that that was merely standard practice. Defendant did not seem upset. He never expressed by word or deed any revocation of his consent to search.

The agents then searched and seized the assassination handbooks, menacing writings and cut-out ads for carbines and other guns available at nearby stores, which items they had seen during the earlier warrantless search.

### III

■ Before commencing the earlier warrantless search, Secret Service Agent Edwards possessed the following information, *inter alia*, which provided the probable cause to search.

1. According to a clearly reliable source, the suspect had made a direct and apparently serious threat against the life of President Reagan and his wife;

2. The whereabouts of the suspect were unknown;

3. The suspect was mobile, as he was seen leaving the center in a car;

4. The President was located within only a few miles of both the site of the threat and the suspect's residence; and

5. The President was scheduled to leave the Century Plaza Hotel and make an appearance in the next several hours following the threat.

The agents' tip being very recent information from an extremely reliable citizen who called to warn them of a threat after he had heard it, probable cause was established. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The tipster was a professional, and a government employee, who stated his name and employment and recounted in accurate detail a threat to shoot the President. Defendant conceded that the account of defendant's statements was entirely accurate.

The social worker obviously took defendant's statement as a "serious threat" and a "serious expression of an intention to inflict bodily harm upon or to take the life of the President," *Roy v. United States,* 416 F.2d 874, 877 (9th Cir.1969). Indeed, he called the Secret Service right after hearing it.

Moreover, the tip was corroborated by the fact that the address proved to be accurate. Finally, the Secret Service agents were aware of and could corroborate the President's presence in Los Angeles a few miles both from the site of the threat and from defendant's room.

■ The following exigent circumstances to search were present:

1. There had been within the last one to two hours a direct and apparently serious threat against the President of the United States;

2. The President was located in the same city as the suspected threatener;

3. The threat of danger was immediate, with the President planning to make an appearance soon thereafter;

4. The whereabouts of the suspect were unknown; and

5. The suspect's plan or modus operandi was unknown.

Additionally, Agent Edwards testified at the hearing on the motion to suppress that it is important to determine the suspect's lifestyle at the earliest possible moment. This can only be readily accomplished by checking his living quarters as soon as possible. He further testified that a suspect's living quarters have quite often provided evidence of a suspect's plan or method for carrying out the threat.

Secret Service agents must be able to take reasonable measures, based on their experience, to protect, warn and restrict the activities of assassination targets in the face of direct threats to kill them. Correspondingly, they must be able to take reasonable measures to learn enough in sufficient time *to be able to* protect, warn and restrict the activities of those targets. *See People v. Sirhan, infra.* Moreover, as this Circuit has held, the mere fact of a threat against the President "may cause substantial harm and is qualitatively different from a threat against a private citizen or other public official. A President ... has a public duty not to allow himself to be unnecessarily exposed to danger. A President's death in office has worldwide repercussions and affects the security and future of the entire nation. [It would] be irresponsible [to] ignore apparently serious threats against the President's life." *Roy v. United States,* 416 F.2d 874, 877 (9th Cir.1969).

Failure to act while a warrant was being obtained would have exposed the President and his party to danger unnecessarily and would have had a "detrimental effect upon presidential activity and movement." *Id.* at 877. *Cf. People v. Sirhan,* 7 Cal.3d 710, 739, 102 Cal.Rptr. 385, 404, 497 P.2d 1121, 1140, *cert. denied,* 410 U.S. 947, 93 S.Ct. 1382, 35 L.Ed.2d 613 (1972) (there was evidence in Sirhan's room, which if found before assassination of Senator Kennedy, would have led his protectors to change or stop his public activities on June 5, 1968).

In *Sirhan,* the California Supreme Court recognized that the exigent circumstances exception applies "in cases where the officers' conduct was prompted by the motive of preserving life and reasonably appeared to be necessary for that purpose." *Id.* at 738, 102 Cal.Rptr. 385, 497 P.2d 1121 (citing *Warden v. Hayden,* 387 U.S. 294, 298–300, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782 (1967)). *Sirhan* has a factual difference—the warrantless search of Sirhan's room occurred the morning *after he was taken into custody* for shooting Senator Kennedy. The *Sirhan* court's reasoning applies equally or perhaps more so to this situation where agents reasonably believe an assassination emergency is then existing and the suspect is still at large. The key to the California Supreme Court's *Sirhan* decision is its understanding that "when assassinations of persons of prominence have repeatedly been committed in this country, it is essential that law enforcement officers be allowed to take fast action in their endeavor to combat such crimes." The decisive factor is whether the court finds, as it did in *Sirhan* and as it does here, that agents "reasonably believed that an emergency existed and that prompt action on their part was necessary." No case, federal or state, has been found that questions the *Sirhan* principle that "the crime [of assassination of a presidential *candidate*] is one of enormous gravity, and the 'gravity of the offense' is an appropriate factor to take into consideration in assessing exigency."[1]

### IV.

■ Furthermore, prior to the second search of defendant's hotel room, defendant's consent was obtained. There was no challenge to the voluntariness of that consent. There was no evidence submitted that the knowledge gained from the initial search was used in any way to obtain defendant's consent. Defendant's consent was freely given and was not tainted by the initial search.

---

**1.** *Cf. United States v. Perez,* 440 F.Supp. 272, 291 n. 47 (N.D.Ohio 1977) ("the court shares the view of the *Sirhan* court that important governmental interests, arising when a unique danger is posed to the whole community, permit governmental officials to make warrantless intrusions upon a defendant's privacy expectation.")

## V.

This exigency exception should be narrow, while its recognition in particular cases like this one is necessary to ensure protection for the President.

IT IS SO ORDERED.