[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1341 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1342 
This Court granted the writ of certiorari to review the conviction of Eddie Jerome Tucker for unlawful possession of marijuana in the first degree. The issue is whether the search and seizure of a film canister were contrary to the Fourth Amendment to the Constitution of the United States.
On the afternoon of October 9, 1992, Capt. Olen Lee and Sgt. William Hurter of the Tuscaloosa Police Department were on patrol in the area of 1225 6th Alley East, Tuscaloosa, Alabama, an area of town described by the officers as a "high crime area." Capt. Lee and Sgt. Hurter, as well as four other officers in two other patrol cars, stopped at 1225 6th Alley East, because there were five or six persons gathered there in front of a shot house.[1] The house is located in a black neighborhood and the persons gathered in front of the house were black men. Between the porch of the house and the roadway there is a yard too small to park a car in, and there is no sidewalk. Some of the men, including Mr. Tucker, were standing in the yard abutting the roadway, and some were in the roadway leaning on a parked car. There had been no calls or complaints to the Tuscaloosa police on October 9 concerning any illegal activity at the house or pertaining to any of the persons gathered in front of the house. Eddie Tucker was not known to either Capt. Lee or Sgt. Hurter before October 9.
Capt. Lee, sitting on the passenger side of the patrol car, was approximately three feet from Mr. Tucker when Sgt. Hurter stopped the car on the roadway near where the persons were gathered. The officers testified that they were not aware of anything illegal occurring among the men, but, as he exited the car, it appeared to Capt. Lee that Mr. Tucker had a large bulge in one of his front pants pockets. For safety reasons, Capt. Lee asked Mr. Tucker what was in his pocket and told him to take whatever it was out so that it could be seen. Mr. Tucker took from his pocket a black 35mm film canister with its lid closed. Both officers testified that they knew at this point that the object was a film canister and was not a weapon.
Capt. Lee then directed his attention to another of the persons present, and Sgt. Hurter asked Mr. Tucker what was in the *Page 1343 
canister. After Sgt. Hurter asked this question, Mr. Tucker "stuck [the canister] behind his back." Sergeant Hurter then asked to see the canister. Mr. Tucker handed the canister to Sgt. Hurter, who opened it and found five $10 bags of marijuana packaged in cellophane. Mr. Tucker was read hisMiranda rights, and Sgt. Hurter testified that it was made obvious to Mr. Tucker that he could not leave. Sgt. Hurter then asked if Mr. Tucker had an automobile present at the house, and Mr. Tucker pointed to one nearby. Sgt. Hurter asked if he could search it, and Mr. Tucker gave him the keys. Twenty-six more $10 bags of marijuana were found in the automobile.
Mr. Tucker moved to suppress the evidence of the marijuana, alleging that it was the product of an illegal search, seizure, and arrest. The motion was denied and the case was submitted for a judgment on stipulated facts. The circuit court rendered a judgment of guilty of possession of marijuana in the first degree, pursuant to § 13A-12-213, Ala. Code 1975, and sentenced Mr. Tucker to three years in the State penitentiary. The circuit court's judgment was affirmed by the Court of Criminal Appeals, with an unpublished memorandum. 658 So.2d 920.
All evidence obtained by a search that is conducted in violation of the Constitution of the United States is inadmissible in a state court. Mapp v. Ohio, 367 U.S. 643,81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Loyd v. State, 279 Ala. 447,186 So.2d 731 (1966). The Fourth Amendment to the Constitution of the United States bans all unreasonable searches. Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a search is unreasonable depends upon the facts and circumstances of the particular case. Sibron v. New York,392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Warrantless searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala. 1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry "stop and frisk" situation.Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. Kinardv. State, 335 So.2d 924 (Ala. 1976).
The State contends that the warrantless search of the film canister here was justified under the exceptions for searches conducted with consent, with probable cause coupled with exigent circumstances, and as incident to a lawful arrest.
 I.
"Consent to a search must be knowingly, intelligently, and freely given." Ex parte Wilson, 571 So.2d 1251, 1255 (Ala. 1990). "Mere submission to police authority will not suffice for consent." Martinez v. State, 624 So.2d 711, 716
(Ala.Crim.App. 1993) (citing Schneckloth v. Bustamonte, 412 U.S. 218,93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); Bumper v. North Carolina,391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); Amos v.United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654
(1921)). Accordingly, the State must prove that there was no express or implied duress or coercion exerted upon the person allegedly consenting to a search. Duncan v. State, 278 Ala. 145, 176 So.2d 840 (1965).
The State's argument as to consent is that Mr. Tucker voluntarily showed the officers what was in his pocket and that he willingly handed the canister to Sgt. Hurter. The facts clearly show that Mr. Tucker showed the canister to the officers in response to their directive. Capt. Lee testified about what happened when he exited the patrol car and saw a bulge in Mr. Tucker's pocket: "I asked him what it was and would he take it out and let me see it." Mr. Tucker complied, producing what the officers recognized as a film canister, and Sgt. Hurter testified that at this point he "asked him what was in it,"[2] and that Mr. Tucker then "stuck it behind his back." *Page 1344 
Sgt. Hurter testified that it was not until after Mr. Tucker had put the canister behind his back that he asked for the canister. Although Sgt. Hurter stated that Mr. Tucker voluntarily handed him the canister, it is evident from the circumstances that Mr. Tucker was not actually given a choice. During cross-examination of Sgt. Hurter at the suppression hearing, the following exchange took place:
"A. Well, I asked [Mr. Tucker] to let me see it.
 "Q. Okay. And did you say that in a tone of voice that let him know that you wanted to see the canister?
"A. Yes, sir.
"Q. And that you intended to see the canister?
"A. Yes, Sir.
 "Q. And that he could no longer hide it behind his back?
"A. Yes, sir.
 "Q. This was not phrased in such a way that you informed him he had the right not to let you see the canister, was it?
"A. No, sir.
 "Q. Okay. And was it only at that point that he brought it from behind his back?
"A. Yes, sir."
It is apparent that Mr. Tucker did not freely consent to the search and seizure of the film canister. Mr. Tucker put the canister behind his back obviously intimating that he did not want Sgt. Hurter to have it. It was only after Sgt. Hurter asked for the canister in such a way that Mr. Tucker knew he should not withhold it that he handed it to Sgt. Hurter. The coercive effect of Sgt. Hurter's words and tone of voice could have only been magnified by the overt presence of five other uniformed police officers and two other marked patrol cars. Therefore, Mr. Tucker's actions evinced a lack of consent to the search of the canister and indicated that it was under at least implied duress or coercion that he submitted the canister to Sgt. Hurter.
 II.
The Court of Criminal Appeals based its affirmance of Mr. Tucker's conviction on a holding that the search of the film canister was justified under the "probable cause coupled with exigent circumstances" exception to the warrant requirement. The first element of the exception has been described as follows:
 "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."
Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302,1310-11, 93 L.Ed. 1879 (1949) (quoting Carroll v. UnitedStates, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543
(1925)); accord Nicaud v. State ex rel. Hendrix, 401 So.2d 43
(Ala. 1981); Daniels v. State, 290 Ala. 316, 276 So.2d 441
(1973). Probable cause, however, "cannot be founded upon mere suspicion." Nicaud, 401 So.2d at 46.
The State avers that the following facts and circumstances were known to Sgt. Hurter: The area of the patrol was a high crime area in regard to which there had been past reports of the illegal sale of alcohol and drugs; Mr. Tucker was observed "congregating" with a group in front of a house owned by a person who had been recently arrested for the illegal sale of alcohol; during the execution of a search warrant at the shot house two to three weeks before Mr. Tucker's arrest, a container of crack cocaine and approximately two marijuana cigarettes were found on a bench presumably located on the front porch of the house where persons had been gathered but had dispersed when police arrived; film canisters are commonly associated with the possession and use of drugs; and Mr. Tucker put the film canister behind his back when asked about its contents. We note that there are also countervailing facts and circumstances, as stated below. *Page 1345 
The fact that an area is known for crime may serve to create a reasonable suspicion in the minds of the police that may support a finding of probable cause. Dixon v. State,588 So.2d 903 (Ala. 1991), cert. denied, 502 U.S. 1044, 112 S.Ct. 904,116 L.Ed.2d 805 (1992). Thus, the officers were justified here in stopping to question the persons gathered in front of a shot house in a high crime area. See Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Just as the officers, for their own safety, would have been justified also in frisking those assembled, id., Capt. Lee was justified in asking to see what was in Mr. Tucker's pocket; Capt. Lee could clearly see a bulge in Mr. Tucker's pocket that, without inspection, could not be conclusively identified as not being a weapon. The question, then, is whether Sgt. Hurter's search and seizure of the film canister after Mr. Tucker had responded to his question concerning its contents by putting the canister behind his back was supported by probable cause.
The fact that persons have gathered in a high crime area cannot alone establish probable cause justifying the warrantless search and seizure of containers in their possession. This is especially true here, because: the police had received no specific complaints concerning illegal activity in the area of the shot house on October 9; the police had received no specific complaints concerning the persons gathered in front of the house on that day; the persons were in the roadway or in the yard near the roadway and were in close proximity with the shot house, but were not on the porch and were not suspected of having recently been in the house; the officers had no reason to suspect that those present had been involved in past illegal activity at the shot house; and there was no indication when the police stopped that anything illegal was occurring. We do not totally discount the factor of a high crime area in our analysis of probable cause, but we give it less weight than other factors, under the circumstances of this case.
The controlling factors in this case are the association of film canisters with the use and possession of drugs and the act of Mr. Tucker in putting the canister behind his back when he was questioned concerning its contents. The State argues that the film canister was a suspicious object because in Sgt. Hurter's experience he had "probably seen several hundred of them" containing narcotics. It is clear that the expertise and experience of a police officer may be taken into account in applying the probable cause test, see Pearson v. State,542 So.2d 955 (Ala.Crim.App. 1989), and that the test of probable cause is indeed concerned with probabilities, "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar, supra,338 U.S. at 175, 69 S.Ct. at 1310.
Reliance on an officer's special expertise and experience, however, "most commonly occurs when an officer is able to identify some illegal substance by smell or by sight because of his training or experience in making such identifications," when a layman would not be qualified to identify the substance. W. LaFave, 1 Search and Seizure § 3.2(c) at 571-72 (2d ed. 1987). The appearance of crack cocaine and the difference in appearance between a marijuana cigarette and a hand-rolled tobacco cigarette are examples. See People v. Poole, 48 Cal.App.3d 881,122 Cal.Rptr. 87 (1975). We again note that, although the determination of probable cause may involve probabilities, mere suspicion is insufficient to support a finding of probable cause.
Here Sgt. Hurter's experience was that, as a narcotics officer, he had seen many film canisters containing narcotics. Setting aside for the moment Mr. Tucker's act of putting the canister behind his back, we find no other facts to support a conclusion that this particular canister contained narcotics. Mr. Tucker was not previously known to the officers, there had been no reports of drug dealings at the shot house on October 9, there had been no complaints concerning the persons gathered in front of the shot house on that day, and, when asked, Mr. Tucker did not hesitate to show the officers that the object in his pocket was a film canister and not a weapon. Additionally, there was no indication that anything illegal was occurring as the police arrived: the police witnessed no transactions *Page 1346 
between the men assembled, they smelled no smoke when they exited the car, and they saw no one leave at their arrival.
Drugs may be possessed and transported in all kinds of containers. Anyone may purchase 35mm film in canisters at a retail store. The primary purpose of film canisters is to hold film, and all such canisters are at least initially used for that purpose. The fact that an officer has first-hand experience with film canisters containing narcotics cannot provide probable cause to open each film canister he may encounter. Nor does the added factor that a film canister is found on a person in a high crime area provide probable cause to open it without a more articulable basis upon which a reasonable person could conclude that the particular canister contained narcotics. Allowing a search in such a situation without requiring a more articulable basis, would be allowing a warrantless search based upon mere suspicion.
Eaton v. State, 45 Ala. App. 464, 231 So.2d 918
(Ala.Crim.App. 1970), is instructive. In Eaton, a policeman saw the defendant driving a car; the policeman knew that the defendant did not have a valid driver's license and that the car had an improper license plate. The policeman had arrested the defendant on previous occasions for possessing prohibited liquor. The policeman attempted to pull the defendant over, but he sped away. After a chase, the defendant wrecked the car and fled on foot. Upon approaching the defendant's car, the policeman saw two empty Dr. Pepper soft drink cartons on the back seat of the automobile. Apparently, such cartons were commonly associated with the transportation and possession of prohibited liquors, because the State argued that their presence, taken with the policeman's knowledge of the defendant's past conduct, was sufficient to establish probable cause to search the automobile for illegal liquor. In holding that the policeman's warrantless search of the defendant's automobile trunk was illegal, the Court of Criminal Appeals stated:
 "Dr. Pepper cartons are not, per se, incriminating. The record is not entirely clear as to what kind of Dr. Pepper cartons and jugs these were; however, we presume that any individual may purchase containers for non-alcoholic beverages at retail outlets.
". . . .
 "In determining whether there is probable cause to search, [we are not permitted] to consider the fruits of the search. Admittedly, the other facts known to Agent Hadden might arouse his suspicion, but suspicion alone will not justify a search."
45 Ala. App. at 466-67, 231 So.2d at 920.
The State argues that the facts of this case are directly analogous to those in Pearson, supra, a case cited in the unpublished memorandum of the Court of Criminal Appeals. In that case the defendant and a companion were sitting in a Chevrolet Camaro automobile parked on a street often used for parking for a nearby bar. Two agents of the West Alabama Narcotics Squad were on patrol in that area and noticed when they drove past the car that the occupants "appeared to be nervous at our presence." Based upon their experience and upon their knowledge of the area, the agents suspected that the occupants were drinking, and the officers stopped to investigate. One officer approached the passenger-side door and began talking with the occupants. The other officer walked to the driver's door and shone his flashlight into the car. He saw the defendant attempt to conceal a 35mm film canister under the driver's seat. The canister would not fit under the seat, so the defendant put it on the floorboard. The officer also saw a pack of rolling papers and two or three loose papers lying on the floorboard. The officer opened the driver's door, seized the canister, opened it, and found that it contained marijuana.
The Court of Criminal Appeals affirmed the defendant's conviction for possession of marijuana, holding that the warrantless search and seizure of the canister were based upon probable cause. The court stated:
 "The facts constituting that probable cause are the suspicious conduct of the passengers of the Camaro, the location of the Camaro, in an area where it was not uncommon for patrons of a bar to sit in their cars and drink, the defendant's suspicious *Page 1347 
conduct in attempting to conceal the film container, the presence of the rolling papers, and the agent's personal knowledge that both film containers and rolling papers were commonly associated with the possession and use of controlled substances."
Pearson, 542 So.2d at 956. The "defendant's suspicious conduct in attempting to conceal the film container" will be addressed below. Putting that conduct aside for the moment, we find that the presence of the rolling papers was essential to the officer's determination that the film canister was suspicious. The rolling papers observed in close proximity with the film canister provided an articulable basis upon which a reasonable person could conclude that the canister contained narcotics. The officer's experience also came into play; observing these objects together would justify his conclusion that it was very probable that the canister contained marijuana. Pearson is distinguishable from the present case because, as discussed above, in the present case there was no evidence indicating that this particular canister contained narcotics and the import of Eaton is that possession of a readily available, multi-purpose object, such as a film canister, is not per se incriminating or suspicious even if it may commonly be associated with contraband.
Thus, the fact that Mr. Tucker was present in front of a shot house in a high crime area and the fact that he possessed there a film canister do not by themselves, or taken together, constitute sufficient "facts and circumstances" upon which to base a finding of probable cause to search the canister. The final factor to be considered, then, is the effect of Mr. Tucker's act of putting the canister behind his back when he was questioned concerning its contents. The State characterizes this act as a "furtive movement" evidencing mens rea. The United States Supreme Court has stated:
 "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest."
Sibron, 392 U.S. at 66-67, 88 S.Ct. at 1904 (citations omitted). Professor LaFave has commented upon this language as follows:
 "Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present."
W. LaFave, 2 Search and Seizure § 3.6(d) at 58 (2d ed. 1987).
Mr. Tucker argues that the act of putting the canister behind his back was not furtive but was a manifestation of an expectation of privacy in the canister,[3] that is, a nonverbal signal to Sgt. Hurter that he did not want to answer the question concerning the canister's contents and that he did not want Sgt. Hurter to take the canister. This is a close issue, but in the circumstances of this case, we find Mr. Tucker's argument persuasive. Initially, it is obvious that the Fourth Amendment would be meaningless if every act asserting privacy in one's personal effects were taken to indicate a mens rea
justifying a finding of probable cause. The question, then, is the proper characterization of Mr. Tucker's act.
The language of the Supreme Court set out above, as well as the cases from our Court of Criminal Appeals applying this language, implies that furtive movement, in the instances in which it is not simply running away, is typically some stealthy act to conceal an object from initial view by the police *Page 1348 
or by strangers or to quickly dispose of the object. The attempt by Pearson to conceal the film canister under the seat of his car is an example of such a stealthy act of concealment from initial view. Pearson, supra. See Jones v. State,616 So.2d 949 (Ala.Crim.App. 1993); Lewis v. State, 518 So.2d 214
(Ala.Crim.App. 1987); cf. Grubbs v. State, 602 So.2d 498
(Ala.Crim.App. 1992); Wright v. State, 601 So.2d 1095
(Ala.Crim.App. 1991); Lamar v. State, 578 So.2d 1382
(Ala.Crim.App.), cert. denied, 596 So.2d 659 (Ala. 1991); Stanfield v.State, 529 So.2d 1053 (Ala.Crim.App. 1988). This type of conduct is consistent with a mens rea. The conduct of Mr. Tucker here, however, is distinguishable; the facts do not show that Mr. Tucker fled, resisted showing the police what was in his pocket, attempted to hide or to drop the canister, or otherwise attempted to prevent the police from initially observing the object in his pocket. Both Capt. Lee and Sgt. Hurter acknowledged that when Mr. Tucker removed the object from his pocket they recognized it as a film canister.
If Mr. Tucker had responded to Sgt. Hurter's question concerning the contents of the canister by putting it back in his pocket, it seems clear that this would have been a manifestation of his right to privacy in the object rather than an indication of a mens rea. Putting the canister behind his back is not so unlike returning it to his pocket that we must conclude that the act was furtive and indicative of a mens rea.
The events involving Mr. Tucker and the police occurred in broad daylight, with approximately as many police officers present as persons gathered in front of the shot house. Sgt. Hurter testified as to the act: "Just appeared to me that he was trying to conceal it from me." Many measures taken to secure privacy in an object may be in some sense "concealment," but here Mr. Tucker could not have concealed the canister by putting it behind his back, because he was in the presence of several police officers and at least two of the officers already knew that he had the canister. The facts do not show that Mr. Tucker attempted to remove the contents of the canister while it was behind his back or that he acted in any manner that would indicate that the canister contained contraband. Therefore, Mr. Tucker's act was not furtive movement that would support a finding of probable cause to search the canister without a warrant.
The State argues that Jones, supra, is directly applicable to these facts. In Jones, two police officers were patrolling a high crime area. One officer stopped to question a man who had an open container of beer. The other officer proceeded and observed the defendant and several other men sitting on automobiles in a parking area. The men were watching the first officer and did not see the other approach. The approaching officer saw the defendant pull "what appeared to be a small plastic bag containing a white substance out of his pocket," drop it on the ground, and kick it under the back of a car. In affirming the defendant's conviction for possession of cocaine, the Court of Criminal Appeals held that the furtive gestures supported a finding of probable cause to arrest the defendant.Jones, 616 So.2d at 950-51.
The facts of Jones are distinguishable from those in the present case: the defendant in Jones was attempting to conceal the object from initial observation by the police, but here the police officers knew what the object was before the allegedly furtive movement occurred; in Jones the contents of the bag were visible and were highly suspicious, but here the contents were not visible and the object was not per se incriminating; and the gesture itself in Jones was to dispose of the object when police were seen in the area, whereas here Mr. Tucker's gesture was to put the previously recognized object behind his back in response to a question concerning its contents. Thus, the circumstances and the gesture involved in Jones were more in the nature of a furtive attempt to conceal contraband from a police officer's initial view than in the nature of an assertion of a privacy right in a personal effect; the opposite is true in the present case. Admittedly the line is difficult to draw, but on the facts of this case it must be drawn to preserve the rights guaranteed by the Fourth Amendment.
Therefore, the facts known to and the circumstances observed by Sgt. Hurter did not *Page 1349 
supply probable cause to search and seize the film canister without a warrant; thus, we need not address the second element of the exception, exigent circumstances.
 III.
The State argues that the search and seizure of the film canister was also justified under the "search incident to a lawful arrest" exception to the warrant requirement. This argument is based upon the contention that Sgt. Hurter had probable cause to arrest Mr. Tucker once he put the canister behind his back in response to the question concerning its contents. Our Court of Criminal Appeals has stated:
 "The amount of evidence required to establish probable cause to search is essentially the same as probable cause to arrest. The difference is when determining probable cause to arrest, the probability relates to the suspect's commission of a crime rather than the probability of finding the object of the search."
State v. Calhoun, 502 So.2d 795, 802 n. 1 (Ala.Crim.App. 1986), aff'd in part, rev'd in part, 502 So.2d 808 (Ala. 1986),on remand, 502 So.2d 817 (Ala.Crim.App. 1987). "[A] search incident to a lawful arrest may not precede the arrest and serve as part of its justification." Sibron, 392 U.S. at 67,88 S.Ct. at 1905. Sgt. Hurter testified that he did not arrest or even intend to arrest Mr. Tucker until after he opened the film canister and saw what he suspected to be marijuana. As noted above, the facts and circumstances here were insufficient to support a finding of probable cause to search; any finding of probable cause to arrest would be based upon the same facts and circumstances. Thus, the State's argument is without merit.
 IV.
The State contends that the discovery of marijuana in the film canister presented probable cause to search Mr. Tucker's automobile, citing Stanfield, supra, 529 So.2d 1053. Thus, the search of the automobile was necessarily predicated upon what we have determined to be an unlawful search and seizure of the film canister. The marijuana found in Mr. Tucker's automobile, then, is also subject to the exclusionary rule under the "fruit of the poisonous tree" doctrine. Duncan, supra. The State's argument as to consent is likewise groundless; Sgt. Hurter would have had no justification or motivation to ask whether Mr. Tucker had an automobile and whether he could search it if the marijuana in the canister had not been previously discovered by the unlawful search.
The marijuana found in the film canister and in Mr. Tucker's automobile was the product of a warrantless search and seizure that were not within any of the exceptions to the warrant requirement. The search and seizure were therefore illegal. For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, HOUSTON, and COOK, JJ., concur.
MADDOX, INGRAM, and BUTTS, JJ., dissent.
[1] "Shot house" is a term used by the police to describe a private residence where illegal whiskey is sold by the shot. This particular residence was the subject of a search warrant executed two to three weeks before October 9. Pursuant to that search, the owner of the residence was arrested and charged with the illegal sale of alcohol, and a small quantity of illegal drugs was found on the front porch, presumably left by persons sitting on the porch who dispersed when the police arrived at the house.
[2] Capt. Lee testified that he did not remember the specific question Sgt. Hurter asked Mr. Tucker, but he stated: "I recall Sgt. Hurter asking him for the — about the container and he stuck it behind him. But at that time, one of the other officers said — asked me something. They was checking another subject, so I was distracted and I don't recall."
[3] The Fourth Amendment protects reasonable expectations of privacy. California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809,90 L.Ed.2d 210 (1986); Smith v. Maryland, 442 U.S. 735,99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The State has not argued that Mr. Tucker's expectation of privacy in the film canister was unreasonable. We note that the film canister in this case could be considered a "personal effect," as it was in Mr. Tucker's pocket and was a closed opaque container designed to contain film, a potentially personal item, and could be used to contain other small potentially personal items, such as medication, coins, or keys.