The appellant, Willie James Abner, pleaded guilty to, and was convicted of, unlawful possession of cocaine, a violation of §13A-12-212, Ala. Code 1975. He was sentenced as a habitual felony offender to 15 years' imprisonment. Before pleading guilty, the appellant had moved to suppress the state's evidence, arguing that the cocaine was seized pursuant to an unlawful search. After a hearing, the trial court denied the motion, and the appellant reserved the right to appeal as to that issue.
Officer Michael Drummond, an officer with the narcotics division of the Montgomery Police Department, was the only witness to testify at the hearing on the appellant's motion to suppress. Officer Drummond stated that on September 7, 1996, at approximately 6:00 p.m., he and several other officers with the department's "Retake Our Turf" unit were on patrol in the unit's large marked police vehicle in an area of Montgomery known for its drug activity, when they saw a group of 10 to 12 people in the street in front of a residence. The officers heard loud music and noticed that some of the people were drinking beer. They pulled their vehicle in front of the residence and approached the people in the street.
Officer Drummond testified that he recognized one of the men because he had arrested him on numerous occasions for drug offenses. According to Officer Drummond, as he and the other officers approached, the people in the street "became kind of nervous and . . . started milling around as if they wanted to get out of the area." (R. 4.) After conducting a patdown search for weapons on the individual he had recognized, Officer Drummond noticed the appellant sitting on the hood of a car parked nearby, officer Drumrnond testified that he asked the appellant to "hop off" the car so he could "make sure he didn't have any weapons," but the appellant "looked in the other direction" and remained on the car. (R. 6.) When Officer Drummond repeated his request and the appellant continued to look away, refusing to make eye contact, Officer Drummond "started getting suspicious of what he was about to do." (R. 5.) Officer Drummond walked up to the appellant, and the appellant "scooted off" the car, at which point Officer Drummond saw a clear plastic bag sticking partly out of the appellant's right *Page 442 
front pants pocket. (R. 6.) Officer Drummond stated that the appellant quickly turned, so that he could not see the plastic bag, and put his hands on the car, as if to be patted down.
Officer Drummond testified that although he could not see the contents of the plastic bag, he "immediately thought there was going to be drugs in the bag," because they were in an area known for drug activity and "[p]robably nine out ten drug arrests we make, the drugs are carried in plastic bags." (R. 7.) Officer Drummond pulled the plastic bag from the appellant's pocket and discovered that it did not contain narcotics, but "a large amount of money." (R. 7.) According to Officer Drummond, as he pulled the plastic bag from the appellant's pocket, a second clear plastic bag was exposed in the watch-pocket portion of the same right front pants pocket. Although Officer Drummond could not see what was inside this second plastic bag, he believed that it, too, was going to contain drugs. Officer Drummond stated that on numerous occasions he had found drugs in people's watch pockets, "because they don't believe the police can see them or feel them when they pat them down." (R. 8.) When Officer Drummond pulled the second plastic bag from the appellant's pocket, he found that it contained 18 smaller plastic bags of cocaine. The appellant was arrested and was charged with possession of cocaine.
At the suppression hearing, Officer Drummond stated unequivocally that he was not conducting a patdown search for weapons when he pulled the plastic bags from the appellant's pocket, and that he was specifically looking for drugs when he removed the bags. There is no contention by the state that Officer Drummond removed the plastic bags from the appellant's pocket for purposes of ensuring his safety or the safety of those around him. Officer Drummond testified that he did not know the appellant before the encounter and that he had no prior information regarding whether the appellant was involved in drug activity.
The appellant's only claim on appeal is that when Officer Drummond removed the plastic bags from his pocket, the police did not have probable cause to arrest him or to search him and that, therefore, the seizure of the cocaine from his pocket was illegal. We agree.
The trial court ruled on the appellant's motion to suppress following a hearing at which it heard oral testimony only from Officer Drummond. The evidence before the trial court is undisputed. Where the evidence before the trial court is undisputed, the reviewing court "will sit in Judgment on the evidence de novo, indulging no presumption in favor of the trial court's application of the law to those facts." State v. Hill, 690 So.2d 1201, 1203
(Ala. 1996), quoting Stiles v. Brown, 380 So.2d 792, 794
(Ala. 1980). The trial court's order denying the appellant's motion to suppress does not reflect the trial court's reason for the denial. The trial court simply denied the appellant's motion with no written or oral findings. However, a reiew of the appellant's argument at the suppression hearing and of his argument on appeal indicates that the trial court's ruling was based upon its interpretation of the term "probable cause" as applied to the undisputed facts of this case; the proper interpretation is a question of law.
 "All evidence obtained by a search that is conducted in violation of the Constitution of the United States is inadmissible in a slate court. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Loyd v. State, 279 Ala. 447, 186 So.2d 731 (1966). The Fourth Amendment to the Constitution of the United States bans all unreasonable searches. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a search is unreasonable depends upon the facts and circumstances of the particular case. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Warrantless *Page 443 
searches are per se unreasonable, unless they fall within a recognized exception. Ex parte Hilley, 484 So.2d 485 (Ala. 1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry `stop and frisk' situation. Daniels v. State, 290 Ala. 316, 276 So.2d 441
(1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception. Kinard v. State, 335 So.2d 924 (Ala. 1976)."
Ex parte Tucker, 667 So.2d 1339, 1343 (Ala.), cert. denied,516 U.S. 944, 116 S.Ct. 382, 133 L.Ed.2d 305 (1995).
 "`Whether there is probable cause to merit a warrantless search and seizure is to be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). "Probable cause exists where all the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed and that contraband would be found in the place to be searched." Sheridan v. State, 591 So.2d 129, 130 (Ala.Cr.App. 1991).'"
Woods v. State, 695 So.2d 636 (Ala.Cr.App. 1996), cert. denied,695 So.2d 643 (Ala. 1997), quoting State v. Stallworth,645 So.2d 323, 325 (Ala.Cr.App. 1994).
The state argues that the cocaine was lawfully seized from the appellant because, it says, Officer Drummond had probable cause to believe that a crime was being committed in his presence. The state relies on the following facts to support its argument: (1) that the appellant was observed with or near a large group of people who had congregated in the street and who were playing loud music and drinking beer;[1] (2) that when the police officers approached, the people in the group became nervous and started to mill around "as if they wanted to get out of the area"; (3) that the area was known to police to be an area where drug activity occurred; (4) that when Officer Drummond asked the appellant to get off the car he was sitting on, the appellant looked away and refused to make eye contact with the officer; (5) that there was a clear plastic bag in the appellant's pants pocket, and Officer Drummond's experience was that plastic bags were frequently used to transport drugs; and (6) that when the appellant got off the car, he quickly turned from Officer Drummond so that the officer could not see the plastic bag. We hold that these facts, considered individually or taken together, did not constitute sufficient facts and circumstances upon which to find probable cause to arrest the appellant, to search his person, or to seize the plastic bags from his pocket.
In Ex parte Tucker, supra, a case factually similar to this case, and one relied on by the appellant in support of his motion to suppress the evidence, the defendant and five or six other persons were gathered in front of a shot house shortly before the incident. The owner of the house had been arrested for the illegal sale of alcohol. The area in which the group was gathered was known to the police officers as a high crime area, but the officers testified that they were unaware of any illegal activity when they approached the group. However, one of the officers noticed a large bulge in the defendant's front pants pocket. For safety reasons, the officer asked the defendant what was in his pocket and told him to take whatever it was out so that it could be seen. The defendant removed from his pocket a closed 35mm film canister. When one of the officers asked the defendant what was in the canister, the defendant placed the canister behind his back. The officer then asked the defendant to give *Page 444 
him the canister. The defendant gave the canister to the officer, who opened it and found marijuana inside. The Alabama Supreme Court held that under these facts, the officers did not have probable cause to arrest the appellant or to conduct a search and that, therefore, the marjiuana was unlawfully seized.
Here, as in Ex parte Tucker, there was no testimony indicating that the appellant was involved in any illegal activity when the police approached the group gathered in the street. "The fact that persons have gathered in a high crime area cannot alone establish probable cause justifying the warrantless search and seizure of containers in their possession." Ex parte Tucker, 667 So.2d at 1345. Although the Supreme (Court in Ex parte Tucker did not totally discount the fact that the arrest and search took place in a high crime area in its analysis of probable cause, it accorded that factor less weight than other factors present in the case. Id.
The outcome of the Supreme Court's probable cause analysis inEx parte Tucker was determined by what the Court called the two "controlling factors" in the case: (1) the alleged association of film canisters with the use and possession of drugs and (2) the defendant's act of putting the canister behind his back when he was asked by the police what it contained. 667 So.2d at 1345. The arresting officer in Ex parte Tucker, Sgt. William Hurter, testified that in his police experience, he had "probably seen several hundred" film canisters containing illegal drugs. Addressing Sgt. Hurter's testimony, the Supreme Court stated:
 "Here Sgt. Hurter's experience was that, as a narcotics officer, he had seen many film canisters containing narcotics. Setting aside for the moment Mr. Tucker's act of putting the canister behind his back, we find no other facts to support a conclusion that this particular canister contained narcotics. Mr. Tucker was not previously, known to the officers, there had been no reports of reports of drug dealings at the shot house on October 9, there had been no complaints concerning the persons gathered in front of the shot house on that day, and, when asked, Mr. Tucker did not hesitate to show the officers that the object in his pocket was a film canister and not a weapon. Additionally, there was no indication that anything illegal was occurring as the police arrived: the police witnessed no transactions between the men assembled, they smelled no smoke when they exited the car, and they saw no one leave at their arrival.
 "Drugs may be possessed and transported in all kinds of containers. Anyone may purchase 35mm film canisters at a retail store. The primary purpose of film canisters is to hold film, and all such canisters are at lest initially used for that purpose. The fact that an officer has first-hand experience with film canisters containing narcotics cannot provide probable cause to open each film canister he may encounter. Nor does the added factor that a film canister is found on a person in a high crime area provide probable cause to open it without a more articulable basis upon which a reasonable person could conclude that the particular canister contained narcotics. Allowing a search in such a situation without requiring a more articulable basis, would be allowing a warrantless search based upon mere suspicion."
Ex parte Tucker, 667 So.2d at 1345-46.
We can find no distinction between Sgt. Hurter's testimony regarding his experience with the use of film canisters to contain illegal drugs in Ex parte Tucker and Officer Drummond's testimony regarding his experience with the use of plastic bags to contain illegal drugs. It is not the primary purpose of plastic bags to hold illegal drugs, and the fact that an officer has first-hand experience with plastic bags containing drugs cannot, without more, provide probable cause to seize each plastic bag the officer may encounter. Moreover, was the case in Ex parte Tucker, *Page 445 
the fact that the appellant was in an area known for drug activity and the fact that he had a clear plastic bag in his pocket that was partially exposed "do not by themselves, or taken together, constitute sufficient `facts and circumstances' upon which to base a finding of probable cause to search" the appellant. SeeEx parte Tucker, 667 So.2d at 1347.
The Alabama Supreme Court in Ex parte Tucker, addressing the issue whether the defendant's act of putting the film canister behind his back when he was questioned concerning its contents constituted a "furtive act" evidencing mens rea, noted:
"The United States Supreme Court has stated:
 "`[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.'
 "Sibron [v. New York], 392 U.S. [40] at 66-67, 88 S.Ct. [1889,] at 1904 [20 L.Ed.2d 917 (1968)] (citations omitted). Professor LaFave has commented upon this language as follows:
 "`Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an appointment attempt to conceal that object from police view, probable cause is then present.'
"W. LaFave, 2 Search and Seizure § 3.6(d) at 58 (2d ed. 1987)." Ex parte Tucker, 667 So.2d at 1347.
The Supreme Court in Ex parte Tucker determined that the defendant's act of placing the film canister behind his back could not be characterized as a "furtive act" indicative of mens rea, but rather was properly viewed as "a manifestation of his right to privacy in the object." 667 So.2d at 1348. In the present case, the state argues that the appellant's actions in looking away and refusing to make eye contact when Officer Drummond spoke to him and in quickly turning from Officer Drummond after getting off the car, so that the officer could not see the plastic bag showing from his pocket, amounted to furtive actions indicative of means rea.
We do not find the appellant's conduct in this regard to be sufficient, either alone or in conjunction with the other factors discussed above, to give Officer Drummond probable cause to arrest or to serarch the appellant or to seize the plastic bags from his pocket.
 "`While there is some authority to the contrary, the majority view appears to be that, unless coupled with additional and objectively suspicious factors, nervousness in the presence of a police officer and/or failure to make eye contact do not establish reasonable suspicion to believe that the person is engaged in criminal activity.'"
Hopkins v. State, 661 So.2d 774, 780 (Ala.Cr.App. 1994), quotingState v. Washington, 623 So.2d 392, 398 (Ala.Cr.App. 1993).
As we have noted, there was not evidence that at the initial encounter between the appellant and the police the appellant was engaged in any illegal activity. There was not evidence that the appellant fled at the approach of the officers, that he attempted to prevent the officers, that he attempted to separate himself from the plastic bag, or that he attempted to prevent Officer Drummond from removing the bag from his pocket. SeeTucker, 667 So.2d at 1348. Although the appellant turned from Officer Drummond when he got off the car and then placed his hands on the car as if to be patted down, Officer Drummond testified that he had told the appellant to get off the car so that he could make sure he did not have any weapons.
Based on Ex parte Tucker and our analysis of the "totality of the circumstances" *Page 446 
in this case, we must conclude that the circumstances did not supply probable cause to search the appellant or to seize the plastic bags from his pants pocket. Thus, Officer Drummond's intrusion into the appellant's pocket to remove the plastic bags was unlawful. Any evidence uncovered by Officer Drummond after his removal of the first plastic bag was unlawfully obtained. Consequently, the cocaine contained in second bag found in and removed from the appellant's pocket was seized pursuant to an unlawful search, and it was error for the trial court to deny appellant's motion to suppress the evidence. Therefore, the judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED
McMILLIAN and COBB, JJ., concur.
BASCHAB, J., dissents with opinion; BROWN, J., joins the dissent.
[1] There was no testimony at the suppression hearing that the appellant had been drinking beer. Officer Drummond testified merely that "a lot of people [were] standing out on the street drinking beer." (R. 3.)