The State of Alabama appeals from the trial court's order granting Mark Christopher White's motion to suppress evidence of cocaine seized as a result of a search of White's residence. At the hearing on White's motion to suppress, Vanessa Wright, a corporal with the Montgomery Police Department's Narcotics and Intelligence Bureau, testified that on February 15, 2000, she received an anonymous telephone call from a citizen who indicated that she lived in the same apartment complex as White and that she suspected that White was engaging in drug activity. The caller gave Cpl. Wright a physical description of White, a description of the vehicle he drove, and the number of the apartment in the complex he was living in at the time. The caller also told Cpl. Wright that an individual had come to her door one night, and had asked for "Mike" and had told her that he wanted to "get a forty." (R. 10.) Cpl. Wright testified that she went to the apartment complex on February 18, 2000, and verified that the vehicle the caller described was parked in the parking lot. Cpl. Wright then checked the license plate of the vehicle and determined that it was registered to White. She also looked up White's address and telephone number in the telephone book to verify that he lived at the apartment complex.
Cpl. Wright testified that she then decided to "conduct a subversive tactic in order to expose his drug activity." (R. 3.) On February 22, 2000, she and several *Page 638 
other officers with the narcotics bureau set up a perimeter around White's residence, she then made a "lead call" to White, which she described as "calling the house pretending to be a friend and letting that person know that they needed to get their drugs out of the house; the police are coming." (R. 3.) Shortly after she made the telephone call to White's residence, Cpl. Wright said, White came out of the apartment building holding a small child; he "nervously" looked around and then placed the child down in the parking lot and "ran back" to his apartment, leaving the child alone in the parking lot. (R. 3.) Approximately two minutes later, White again emerged from his apartment. At that point, Cpl. Wright said, she approached White, told him who she was and why she was there, and asked if he would consent to a search of his apartment. White signed a consent form, which was introduced into evidence at the suppression hearing. During the search of White's residence, cocaine was found on the back porch.[1]
Following the suppression hearing, the trial court granted White's motion to suppress on the ground that the anonymous telephone call was not sufficiently corroborated to establish reasonable suspicion to stop White in the parking lot of the apartment complex and to obtain his consent to search his apartment.
On appeal, the State contends that the trial court erred in granting White's motion to suppress because, it says, the initial encounter with White in the parking lot of the apartment complex was not a seizure and, therefore, no reasonable suspicion was necessary. However, the State did not present this argument to the trial court during the hearing on White's motion to suppress; the prosecutor argued only that there was reasonable suspicion to stop White. See State v. Brown, 591 So.2d 113,115 (Ala.Crim.App. 1991), wherein this Court refused to consider the merits of the State's first, third, and fourth arguments, which were made on appeal in an attempt to obtain a reversal of the trial court's order suppressing drug evidence. Because the State never argued to the trial court that the stop of White was not a seizure, that argument has been waived for purposes of seeking a reversal of the trial court, and we express no opinion as to whether the stop was, in fact, a seizure.
The State also argues on appeal that even if the stop did constitute a seizure, as the trial court implicitly found, it was a valid stop because, the State says, the anonymous tip was sufficiently corroborated so as to establish reasonable suspicion to warrant stopping White. We agree.
Initially, we note that the standard of review in this case is de novo because the evidence at the suppression hearing was undisputed; Cpl. Wright was the only witness to testify at the hearing. See State v.Hill, 690 So.2d 1201 (Ala. 1996), and Barnes v. State, 704 So.2d 487
(Ala.Crim.App. 1997).
 "The United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), held that `a police officer may, in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' 392 U.S. at 22, 88 S.Ct. at 1880. The standard for allowing a Terry stop is whether there is a *Page 639 
reasonable suspicion that `the person being stopped has engaged in some type of criminal activity.' Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala. 1986)."
Ex parte Carpenter, 592 So.2d 627, 629 (Ala. 1991).
 "It is well settled that '[i]nformation provided by a reliable informant can provide the reasonable suspicion required to justify a Terry stop.' Lamar v. State, 578 So.2d [1382] at 1385 [(Ala.Crim.App. 1991),] and authorities cited therein. Whether the information provided by an informant in a particular case is sufficient to establish reasonable suspicion is to be determined by applying the `totality of the circumstances' test set out in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Alabama v. White, 496 U.S. [325] at 330-31, 110 S.Ct. [2412] at 2416 [(1990)]. Under this test, which was formulated in the context of probable cause, the informant's `veracity,' `reliability,' and `basis of knowledge' are `highly relevant' factors to be considered. Gates, 462 U.S. at 230, 103 S.Ct. at 2328. However, because reasonable suspicion is a lower standard, there need not be as strong a showing with regard to these factors as is required for the establishment of probable cause, Alabama v. White, 496 U.S. at 330-31, 110 S.Ct. at 2415."
Wilsher v. State, 611 So.2d 1175, 1179 (Ala.Crim.App. 1992).
In this case, the tip came from an anonymous caller.
 "Because the veracity of the person giving the anonymous tip is `by hypothesis largely unknown, and unknowable,' Illinois v. Gates, 462 U.S. [213] at 237, 103 S.Ct. [2317] at 2331 [(1983)], and because ordinary citizens do not generally provide extensive recitations of the basis of their everyday observations, an anonymous tip, without more, seldom demonstrates an informant's reliability or the basis of the informant's knowledge."
Ex parte Barnette, 624 So.2d 507, 508 (Ala. 1993). However, in Alabamav. White, 496 U.S. 325 (1990), the United States Supreme Court held that a tip from an anonymous informant could provide reasonable suspicion for an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), if the tip was sufficiently corroborated through independent police work. The Court stated:
 "Illinois v. Gates, 462 U.S. 213 (1983), dealt with an anonymous tip in the probable-cause context. The Court there abandoned the `two-pronged test' of Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969), in favor of a `totality of the circumstances' approach to determining whether an informant's tip establishes probable cause. Gates made clear, however, that those factors that had been considered critical under Aguilar and Spinelli — an informant's `veracity,' `reliability,' and `basis of knowledge' — remain `highly relevant in determining the value of his report.' 462 U.S., at 230. These factors are also relevant in the reasonable-suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard.
 "The opinion in Gates recognized that an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their *Page 640 
everyday observations and given that the veracity of persons supplying anonymous tips is `by hypothesis largely unknown, and unknowable.' Id., at 237. This is not to say that an anonymous caller could never provide the reasonable suspicion necessary for a Terry[v. Ohio, 392 U.S. 1 (1968),] stop. But the tip in Gates was not an exception to the general rule, and the anonymous tip in this case is like the one in Gates: '[It] provides virtually nothing from which one might conclude that [the caller] is either honest or his information reliable; likewise, the [tip] gives absolutely no indication of the basis for the [caller's] predictions regarding [Vanessa White's] criminal activities.' 462 U.S., at 227. By requiring '[s]omething more,' as Gates did, ibid., we merely apply what we said in Adams[v. Williams, 407 U.S. 143
(1972)]: `Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized,' 407 U.S. at 147. Simply put, a tip such as this one, standing alone, would not '"warrant a man of reasonable caution in the belief" that [a stop] was appropriate.' Terry, supra, at 22, quoting Carroll v. United States, 267 U.S. 132, 162 (1925).
 "As there was in Gates, however, in this case there is more than the tip itself. The tip was not as detailed, and the corroboration was not as complete, as in Gates, but the required degree of suspicion was likewise not as high. We discussed the difference in the two standards last Term in United States v. Sokolow, 490 U.S. 1, 7 (1989):
 "`The officer [making a Terry stop] . . . must be able to articulate something more than an "inchoate and unparticularized suspicion or `hunch.'" [Terry, 392 U.S.] at 27. The Fourth Amendment requires "some minimal level of objective justification" for making the stop. INS v. Delgado, 466 U.S. 210, 217 (1984). That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means "a fair probability that contraband or evidence of a crime will be found," [Gates, 462 U.S., at 238], and the level of suspicion required for a Terry stop is obviously less demanding than for probable cause.'
 "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Adams v. Williams, supra, demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a Terry stop. 407 U.S., at 147. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the `totality of the circumstances — the whole picture,' United States v. Cortez, 449 U.S. 411, *Page 641 
417 (1981), that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. The Gates Court applied its totality-of-the-circumstances approach in this manner, taking into account the facts known to the officers from personal observation, and giving the anonymous tip the weight it deserved in light of its indicia of reliability as established through independent police work. The same approach applies in the reasonable-suspicion context, the only difference being the level of suspicion that must be established. Contrary to the court below, we conclude that when the officers stopped respondent, the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that respondent was engaged in criminal activity and that the investigative stop therefore did not violate the Fourth Amendment.
 "It is true that not every detail mentioned by the tipster was verified, such as the name of the woman leaving the building or the precise apartment from which she left; but the officers did corroborate that a woman left the 235 building and got into the particular vehicle that was described by the caller. With respect to the time of departure predicted by the informant, Corporal Davis testified that the caller gave a particular time when the woman would be leaving, App. 5, but he did not state what that time was. He did testify that, after the call, he and his partner proceeded to the Lynwood Terrace Apartments to put the 235 building under surveillance, id., at 5-6. Given the fact that the officers proceeded to the indicated address immediately after the call and that respondent emerged not too long thereafter, it appears from the record before us that respondent's departure from the building was within the timeframe predicted by the caller. As for the caller's prediction of respondent's destination, it is true that the officers stopped her just short of Dobey's Motel and did not know whether she would have pulled in or continued past it. But given that the 4-mile route driven by respondent was the most direct route possible to Dobey's Motel, [White v. State,] 550 So.2d [1074], at 1075 [(Ala.Crim.App. 1989)], Tr. of Oral Arg. 24, but nevertheless involved several turns, App. 7, Tr. of Oral Arg. 24, we think respondent's destination was significantly corroborated.
 "The Court's opinion in Gates gave credit to the proposition that because an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity. 462 U.S., at 244. Thus, it is not unreasonable to conclude in this case that the independent corroboration by the police of significant aspects of the informer's predictions imparted some degree of reliability to the other allegations made by the caller.
 "We think it also important that, as in Gates, `the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.' Id., at 245. The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have `predicted' that fact *Page 642 
because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's future behavior, because it demonstrated inside information — a special familiarity with respondent's affairs. The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. See ibid. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed, at least well enough to justify the stop.
 "Although it is a close case, we conclude that under the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car."
496 U.S. at 328-32 (emphasis added).
Here, as in White, the anonymous tip provided nothing from which one might conclude that the caller was honest or that her information was reliable, and the tip gave absolutely no indication of the basis for the caller's knowledge. In addition, although the majority of the information provided by the anonymous caller was corroborated by Cpl. Wright — e.g., that White lived at the apartment complex the caller said he did, that he owned the vehicle the caller said he owned, and that the vehicle was parked in the parking lot of the apartment complex — this information could have easily been obtained by the general public; "[it] did not predict future actions of the appellant and, standing alone, offered little indication of criminal — or even suspicious — activity." King v. State, 736 So.2d 1122, 1124 (Ala.Crim.App. 1997). Therefore, the tip, even though corroborated, was not sufficient, by itself, to establish reasonable suspicion to stop White.
However, in this case, there was more than just the anonymous tip. Cpl. Wright did more than merely corroborate the information provided by the anonymous caller; she also made a "lead call" to White pretending to be a friend and warning him that he should get his drugs out of his apartment because the police were coming.[2] Shortly after the call, a man, matching the description of White given by the anonymous caller and later positively identified as White, emerged from the apartment building carrying a small child. After looking around "nervously," he put the child down in the parking lot and "ran back" inside his apartment, leaving the child outside alone. Cpl. Wright testified that White emerged again from the apartment building approximately two minutes *Page 643 
later, at which point Cpl. Wright approached him.
Nervousness alone is not sufficient to establish reasonable suspicion; however, it is a factor to be considered, and when coupled with other suspicious factors may establish reasonable suspicion. See generallyAbner v. State, 741 So.2d 440 (Ala.Crim.App. 1998), and State v.Washington, 623 So.2d 392 (Ala.Crim.App. 1993). In addition, "[i]t is well settled that furtive actions at the approach of law officers `are strong indicia of mens rea.'" State v. Murray, 733 So.2d 945, 949-50
(Ala.Crim.App. 1999), quoting Ex parte Tucker, 667 So.2d 1339, 1347
(Ala. 1995).
The evidence indicated that White came out of his apartment shortly after being informed by Cpl. Wright that he should get the drugs out of his apartment because the police were coming. When he came out, he looked around nervously, and then ran back to his apartment, leaving the small child he was carrying in the parking lot alone. He emerged from his apartment again approximately two minutes later. This behavior, in anticipation of an encounter with the police, was bizarre and could have led Cpl. Wright to reasonably conclude that White had something to hide in his apartment and that he was in the process of fleeing in order to avoid any contact with the police. We conclude based on the totality of the circumstances, that the tip from the anonymous caller and Cpl. Wright's corroboration of much of the caller's information, when considered in conjunction with White's nervousness and his unusual furtive actions following the lead call, were sufficient to establish reasonable suspicion for an investigatory stop of White. Therefore, we hold that the trial court erred in granting White's motion to suppress.
Based on the foregoing, the judgment of the trial court is reversed and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMillan, P.J., and Cobb, Baschab, and Wise, JJ., concur.
[1] White was subsequently indicted for trafficking in cocaine and failure to affix a tax stamp.
[2] We note that White argues on appeal that the initial telephone call by Cpl. Wright to his residence was itself a seizure under the Fourth Amendment. Although the trial court stated in its order granting Wright's motion to suppress that the telephone call was "permissible," White never argued to the trial court, either in his motion to suppress or at the hearing on the motion, that the telephone call was a seizure or that it was otherwise impermissible. (C. 7.) Therefore, the propriety of the telephone call is not properly before this Court for review, and we express no opinion on that issue. See, e.g., Pace v. State, 766 So.2d 201
(Ala.Crim.App. 1999). We likewise express no opinion as to the voluntariness of White's consent to search because White also never argued to the trial court, either in his motion to suppress or at the hearing on the motion, that his consent was involuntary.