On Application for Rehearing

JOINER, Judge.
This Court’s opinion of December 14, 2012, is withdrawn, and the following is substituted therefor.
George Willie Pollard was charged by indictment with first-degree unlawful manufacture of a controlled substance, see § 13A-12-218, Ala.Code 1975.
On June 1, 2011, Pollard filed a pretrial motion to suppress the evidence seized as a result of a traffic stop. Specifically, *828 Pollard stated in his motion to suppress that the “[o]fficers of the Opelika Police Department conducted a stop and search of [Pollard] resulting in the discovery of contraband and the arrest of [Pollard] and the statements taken from him,” and Pollard argued that the “evidence and statements are due to be suppressed in that [the] search leading to the discovery of [the] evidence and statements [was] conducted without a search warrant.” (C. 24.)
At the suppression hearing, the undisputed evidence established the following: On January 12, 2011, at approximately 3:18 p.m., Corporal Brantley Cargill received a “Meth Check Alert” indicating that Pollard had purchased pseudoephed-rine at a Wal-Mart discount store in Opeli-ka. Cargill explained that he would receive these alerts “when someone would purchase pseudoephedrine that [he] had on a watch list[;] it would alert [him] via email someone that had purchased and where they purchased and how many grams they purchased.” (R. 81.) Cargill further explained that an individual is placed on the watch list if Cargill knows that the individual uses methamphetamine or purchases “excessive amounts of pseu-doephedrine.” (R. 81.) According to Car-gill, he entered Pollard into the watch list because of prior involvement with him in September 2010; specifically, Pollard “had previously been arrested for the precursor, and he is a known meth user and possibly a meth cook.” (R. 87.) Cargill then contacted Detective Michael Rogers, a narcotics investigator with the Opelika Police Department, and told Rogers that he had received an e-mail alert indicating that Pollard had purchased pseudoephedrine at a Wal-Mart discount store in Opelika.[1] After Rogers received the information from Cargill, Rogers drove to the area of Interstate 85 and exit 64 in Opelika. Rogers then positioned his vehicle “on the edge of the roadway facing northbound at exit 64 ... in an attempt to observe any vehicles traveling north. And [his] main purpose ... was to observe the vehicle that [Pollard] was occup[ying].”
While Rogers was waiting, a black vehicle passed him, which, he said, was occupied by “two black males and a redheaded female.” Rogers was familiar with both Pollard and Pollard’s wife, Christy. Rogers knew that Christy had red hair so he decided to follow the vehicle to determine whether Christy was the “redheaded female” in the vehicle and to determine whether Pollard was also in the vehicle. When Rogers pulled up next to the vehicle he saw Pollard in the front passenger seat. Rogers then “fell back in behind” the vehicle, ran the vehicle’s license tag number, and determined that it was registered to Steve Madden. Rogers “was informed that [Madden] had an outstanding warrant” for theft of property. After Rogers learned that Madden had an outstanding warrant, Rogers activated his emergency equipment and initiated a traffic stop on the vehicle. According to Rogers, he conducted the traffic stop based on the outstanding warrant for Madden coupled with the information he had that Pollard had recently purchased pseudoephedrine.
When the vehicle stopped, Rogers made contact with the driver — Madden—and asked him to step out of the vehicle. Rogers then asked Madden for consent to search the vehicle. Madden gave Rogers consent to search the vehicle, and, during the search, Rogers discovered “a gallon can of Coleman camp fuel,” “a box of Aleve-D cold pills,” and two bottles of “one *829 hundred percent household drain cleaner” on the rear floorboard — items commonly used in the manufacture of methamphetamine. Rogers then read Pollard his Miranda[2] rights, and Pollard acknowledged that he understood his rights, signed a waiver of those rights, and provided a statement.
Although Pollard argued in his written motion to suppress that the “evidence and statements are due to be suppressed in that [the] search leading to the discovery of [the] evidence and statements [was] conducted without a search warrant” (C. 24), the circuit court, at the suppression hearing during the testimony of Detective Rogers, framed thé issue before it as follows:
“Well, you know, the issue is whether or not this e-mail is enough to base a stop on, and I want to find out whether it was verified or not.”
(R. 71.) At the close of all the evidence, the circuit court stated:
“It appears it may be a matter of first impression. We will have Mr. Madden here tomorrow. But that’s really not the primary issue I am concerned with. It seems to me the — the issue before the Court is whether or not you have a right of temporary detention, and — and this is based on a — a notification from some type of computer software. It says:
“ ‘All reports should be confirmed with reported pharmacist.’
“So — you know, I have never had a situation where I have known of a stop based on a computer software generated e-mail.”
(R. 95-96.) After analogizing the e-mail alert to an anonymous tip, the circuit court ordered the parties to research the issue and return the following morning. When the parties returned, the following exchange occurred:
“THE COURT: Okay. When we left yesterday, talking about [Ex parte Aaron, 913 So.2d 1110 (Ala.2005) ], and — so did anybody find any research over the evening?
“[Pollard’s counsel]: Your Honor, I was unable to find a single case in the United States that dealt with an electronic database. I am not saying there is not one out there. I am saying I was unable to find one,
“We do rest on our position with [Aaron ], and further state, in addition to that, the case of B.J.C. v. State, [992 So.2d 90 (Ala.Crim.App.2008) ], I believe this is a juvenile case dealing with a stop related to a handgun or a firearm. But the — the important holding in that case and this has been espoused in other cases, 11th Circuit cases, U.S. Supreme Court cases:
“ ‘The reasonable suspicion here issued requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify and — a determinate person.’
“In this case I think the testimony was without question that the tip, regardless of what it was in — gave rise or asserted legal conduct, Mr. Pollard bought one box of pills. Two point four grams. Well within the range allowed with one day in between 90 days.
“So the tip was not even asserting illegal conduct. And then again, we fall back on our position with [Aaron ], that — that the — that the tip must be reliable. In this case the reliability is called into question by the very tip itself.
“The — again, as the Court is well aware, the — the e-mail ask[s] that it be confirmed. Thus, basically stating on its face that it’s unreliable, so — I mean, that’s kind of where we stand.
*830 “THE COURT: Did you find anything?
“[Prosecutor]: No, sir. And it’s truly a ease of first impression.
“THE COURT: Okay. All right. Well — and the reason I wanted' to — to bring it up right now is really — I don’t see what the purpose of having Mr. — is it Mr. Macken-—
“[Prosecutor]: Madden.
“THE COURT: — Mr. Madden testify because he doesn’t have anything to shed on this particular point.
“[Pollard’s counsel]: Not on this point, Your Honor, but there — if this is not dispositive of the issue, he is going to— may offer some testimony regarding consent and the issue of whether or not—
“THE COURT: Well—
“[Pollard’s counsel]: — He had grounds to waive Mr. Pollard’s rights, considering that Mr. Pollard paid for the ride.
“THE COURT: Well, I think the [Aaron ] case is pretty much directly— as much as it can be, directly on point. In fact, it’s talking about cold pills from Wal-Mart.
[[Image here]]
“THE COURT: So — so I am going to grant the motion to suppress.”
(R. 101-05.)
Thereafter, on July 7, 2011, the circuit court issued- a written order granting Pollard’s motion to suppress and finding, in part, as follows:
“It appears that this matter is a matter of first impression for this Court since it involves an electronic e-mail; however, it is the Court’s opinion that the caselaw involving anonymous tips would be applicable to this fact situation. Furthermore, the Court took this matter under advisement and asked the parties to research whether or not they could find a case involving a stop based on an electronic e-mail. When the hearing was recommenced on June 21, 2011, the attorneys informed the Court that they could not find any case directly on point.
“Therefore, based on the authority as set forth in [Ex parte Aaron, 913 So.2d 1110 (Ala.2005),] the court is of the opinion that [Pollard’s] motion to suppress is due to be granted.”
(C. 27-28.) The State appeals the circuit court’s ruling pursuant to Rule 15.7, Ala. R.Crim. P.
Initially, we note that the circuit court’s order granting Pollard’s motion to suppress is based on undisputed evidence. Regarding the proper standard of review to be applied in this case, this Court has held:
“ ‘The trial court’s ultimate legal conclusion on a motion to suppress as to whether a given set of facts constitutes reasonable suspicion of probable cause is reviewed de novo on appeal.’ State v. Smith, 785 So.2d 1169, 1173 (Ala.Crim.App.2000) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). 4 “Where the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate court] will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.”’ State v. Hill, 690 So.2d 1201, 1203 (Ala.1996) (quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980)).”
Worthy v. State, 91 So.3d 762, 765 (Ala.Crim.App.2011). “In the instant case, the facts are uncontested; the only issue is the circuit court’s application of the law to those facts. This Court affords no presumption in favor of the circuit court’s ruling.” Muse v. State, 42 So.3d 789, 791 (Ala.Crim.App.2009).
*831 On appeal, the State argues (1) that the circuit court “erred when it suppressed evidence seized from [the vehicle in which Pollard was riding] because the court overlooked Detective Michael Rogers’s testimony that [the driver of the vehicle] had an outstanding warrant for his arrest”;[3] and (2) that the circuit court “erred when it held that ... the computer generated email alert was analogous to an anonymous tip_” (State’s brief, pp. 8,12.)
The following is well settled:
“ ‘ “Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), law enforcement officers may conduct investigatory stops of persons or vehicles if they have a ‘reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur. See generally Caffie v. State, 516 So.2d 822, 825-26 (Ala.Crim.App.1986), [affirmed], 516 So.2d 831 (Ala.1987).’ Lamar v. State, 578 So.2d 1382, 1385 (Ala.Crim.App.), cert. denied, 596 So.2d 659 (Ala.1991). ‘Reasonable suspicion is a less demanding standard than probable cause,’ Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990), requiring only that the detaining officers ‘have a particularized and objective basis for suspecting the person detained of criminal activity,’ Webb v. State, 500 So.2d 1280, 1281 (Ala.Crim.App.), cert. denied, 500 So.2d 1282 (Ala.1986).”’”
Hinkle v. State, 86 So.3d 441, 451 (Ala.Crim.App.2011) (quoting State v. Davis, 7 So.3d 468, 470 (Ala.Crim.App.2008)).
Here, as discussed above, the circuit court concluded that the e-mail generated by .the National Precursor Law Enforcement Exchange Program and sent to Car-gill was analogous to an anonymous tip that did not provide a sufficient basis to conduct an investigatory stop on the vehicle in which Pollard was riding. To support its conclusion, the circuit court relied solely on the Alabama Supreme Court’s decision in Ex parte Aaron, 913 So.2d 1110 (Ala.2005). The circuit court’s reliance on Aaron, however, is misplaced because Aaron is distinguishable from this case.
In Aaron, the following occurred:
*832 “Aaron was one of two passengers in an automobile being driven by [Brian] Shaver. An anonymous tip, purporting to be from an employee of a Wal-Mart discount department store where Aaron, Shaver, and Joyce Lawler Shaver, Shaver’s wife, had purchased several packages of over-the-counter cold medication containing pseudoephedrine, led to a warrantless stop of Shaver’s vehicle.... After the vehicle was stopped, a deputy sheriff saw the packages of the cold medication in ‘plain ■view’ in the vehicle. Subsequently, Aaron, Shaver, and Joyce Shaver were arrested.”
913 So.2d at 1110-11. The Alabama Supreme Court then held that
“‘a tip from an anonymous informant could provide reasonable suspicion for an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), if the tip was sufficiently corroborated through independent police work.’ State v. White, 854 So.2d 636, 639 (Ala.Crim.App.2003) (citing Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). From the testimony at the hearing, it appears that ‘Shaver’s vehicle was stopped as the result of the telephone call to the police from the Wal-Mart [discount department] store without any intervening police investigation; there is no indication in the record that the police did anything to corroborate the information given in the telephone call from Wal-Mart before stopping Shaver’s vehicle.’ Ex parte Shaver, 894 So.2d at 787.
“In Ex parte Shaver, a majority of this Court held:
“ ‘[T]he scant evidence provided by [the deputy sheriff] concerning the nature of the Wal-Mart telephone call provides insufficient indicia of reliability to establish the requisite “reasonable suspicion” required under Terry [v. Ohio, 392 U.S. 1 (1968)] for an investigative stop. As explained, no evidence was presented to indicate that any police work preceding the stop in any way corroborated the telephone tip so as to cumulatively provide “reasonable suspicion,” as discussed in State v. White [, 854 So.2d 636 (Ala.Crim.App.2003) ]. In the absence of the constitutionally required reasonable suspicion to support the initial stop, none of the evidence gained as a result of that stop or the ensuing detention is properly admissible. Accordingly, the trial court erred when it denied Shaver’s motion to suppress the evidence, and the Court of Criminal Appeals erred in affirming the trial court’s judgment.’
“894 So.2d at 792.
“By virtue of the fact that Aaron was a passenger in Shaver’s vehicle, the same evidence that failed to provide sufficient indicia of reliability required to establish reasonable suspicion for an investigatory stop in Ex parte Shaver also provides insufficient indicia of reliability required to establish reasonable suspicion with respect to Aaron. Accordingly, Aaron’s motions to suppress the .evidence of the pills containing pseudoephedrine and the subsequent statement she made to police after the investigatory stop should have been granted.”
Ex parte Aaron, 913 So.2d at 1111-12.
Thus, in Aaron, the sole basis for the investigatory stop was an anonymous tip. Here, unlike in Aaron, the e-mail Cargill received informing him that Pollard had purchased pseudoephedrine from a Wal-Mart discount store, which he, in turn, relayed to Rogers,, was not the sole basis for conducting the stop of the vehicle *833 in which Pollard was riding.[4] As discussed above, the State presented testimony at the suppression hearing that established the following: When Rogers pulled up next to the vehicle he believed to be occupied by Pollard, he saw Pollard in the front passenger seat. Rogers then “fell back in behind” the vehicle, ran the vehicle’s license tag number, and determined that it was registered to “Steve Madden.” Rogers “was informed that [Madden] had an outstanding warrant” for theft of property. After Rogers learned that Madden had an outstanding warrant, Rogers activated his emergency equipment and initiated a traffic stop on the vehicle. According to Rogers, he conducted the traffic stop based on the outstanding warrant for Madden and based on the information he had that Pollard had purchased pseu-doephedrine. Thus, the State’s evidence at the suppression hearing established a second, independent reason for conducting the investigatory stop on the vehicle in which Pollard was riding.
Although Pollard contends, in his brief on appeal, that “the record is completely devoid of any evidence that Rogers knew that Madden was driving the vehicle” (Pollard’s brief, pp. 17-18), Rogers testified that he received information that the registered owner of the vehicle, Madden, had an outstanding warrant for theft of property. Thus, Rogers had sufficient justification to conduct a stop on the vehicle to determine whether Madden was, in fact, in the vehicle. See § 15-10-3(a), Ala. Code 1975 (providing that, when a law-enforcement officer “has actual knowledge that a warrant for [a] person’s arrest for the commission of a felony or misdemean- or has been issued” he may “arrest [that] person without a warrant, on any day and at any time”).[5]
Accordingly, the circuit court’s order granting Pollard’s motion to suppress is reversed, and this case is remanded to the circuit court for proceedings consistent with this opinion.[6]
APPLICATION POR REHEARING OVERRULED; OPINION OF DECEMBER 14, 2012, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
WELCH, KELLUM, and BURKE, JJ., concur. WINDOM, P.J., dissents, with opinion.

. Rogers testified on cross-examination that the e-mails are generated as a part of a program called the National Precursor Law Enforcement Exchange Program (“NPLEX”), which, he said, is a "database.... maintained by the State of Alabama.” (R. 53.)

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Pollard contends, in his brief on appeal, that the State’s outstanding-warrant argument is not properly before this Court for review because, he says, it failed to first raise this claim in the circuit court. Because, however, we review the circuit court’s application of the law to the facts in this case de novo, see Worthy, 91 So.3d at 765, and that fact was squarely presented to the circuit court, the argument is properly before this Court for review.
Pollard, in his brief on application for rehearing, contends that our holding — that the State's argument on appeal is properly before this Court for review — “ ‘confuses the concepts of waiver and de novo review.’ ” (Pollard’s brief on application for rehearing, p. 5 (quoting State v. Pollard, [Ms. CR-10-1560, Dec. 14, 2012] (Ala.Crim App.2012) (Windom, P.J., dissenting).) The Alabama Supreme Court has noted that
" ‘[ajlthough on appeal from an intermediate court the higher court may be limited to the questions of law raised or argued at the trial, it is not limited to the arguments there presented.’ 5 C.J.S. Appeal and Error § 978 (2007) (emphasis added). In other words, ‘[n]ew arguments or authorities may be presented on appeal, although no new questions can be raised.' 4 C.J.S. Appeal and Error § 297 (emphasis added).”
Ex parte Jenkins, 26 So.3d 464, 473 n. 7 (Ala.2009). Thus, under Jenkins, a party waives on appeal questions of law not first raised in circuit court.
As stated above, the only question of law before the circuit court was whether the "evidence and statements are due to be suppressed in that [the] search leading to the discovery of [the] evidence and statements [was] conducted without a search warrant.” (C. 24.) The State on appeal is merely asserting an argument — based on undisputed evidence presented to the circuit court — as to why the circuit court erred in ruling on the question of law that Pollard raised in his motion to suppress.

. We need not decide whether the circuit court correctly held that the e-mail at issue here is analogous to an anonymous tip. Even if that analogy is correct, Aaron is distinguishable from the facts of this case.

. Although Pollard argues that "the State offered no evidence that the alleged warrant for Madden was 'issued in accordance with this chapter' " (Pollard’s brief, p. 18 (citing § 15-10-3(a), Ala.Code 1975)), Pollard did not dispute the evidence at the suppression hearing that at the time of the stop Madden had an outstanding warrant for theft of property.

. Although we hold that there was a sufficient basis on which to conduct an investigatory stop, we express no opinion regarding the search subsequent to the stop. The circuit court addressed only the investigatory stop and suppressed the State’s evidence on that basis. This Court, likewise, addresses only whether there existed a lawful basis on which to conduct an investigatory stop.