PER CURIAM.
The State of Alabama appeals the circuit court’s decision to suppress evidence of marijuana discovered during a search of Teddy Lee Knox’s vehicle after Knox was stopped for a traffic violation. For the reasons that follow, this Court reverses the circuit court’s order and remands this cause for further proceedings.
On August 9, 2011, Officer Matt Wilson of the Fort Payne Police Department was patrolling Interstate 59 when he encountered a vehicle being driven by Knox. Knox was driving his vehicle at what Officer Wilson considered to be an unusually slow speed. As Officer Wilson was passing Knox’s vehicle, he made eye contact with Knox. Knox appeared startled and maneuvered his vehicle into the emergency lane, where he stopped. Officer Wilson briefly continued down the interstate before stopping his patrol vehicle to wait on Knox to resume driving. After a few minutes, Knox’s vehicle passed Officer Wilson’s. Officer Wilson followed Knox until Knox crossed into another lane of traffic *1206 without signaling. Officer Wilson then initiated a traffic stop.
Officer Wilson approached the passenger side of Knox’s vehicle. Officer Wilson did not see any contraband in the vehicle, but he did notice that there was a single key in the ignition—Officer Wilson felt that a single key was suspicious because it suggested that the vehicle was not connected to Knox. Officer Wilson asked Knox for his driver’s license and proof of insurance, and Knox gave Officer Wilson several documents, one of which indicated that Knox was driving a rental vehicle that had not been rented in his name. Officer Wilson described Knox as being very nervous—Knox’s voice and hands were shaking. Knox was allowed out of the vehicle to retrieve his license, which had been issued in Texas, from the trunk of the vehicle. As Officer Wilson drafted a warning citation, he questioned Knox about his travel plans and the female passenger in his vehicle.
Knox told Officer Wilson that he was from Houston, Texas, which Officer Wilson found to be suspicious because, according to Officer Wilson, “most narcotics traffickers come from around the border or' the southwestern states.” (Supp. R. 7.) Officer Wilson also found it suspicious that Knox was traveling northbound on Interstate 59 because Officer Wilson considered that to be a known route of narcotics traffic to the east coast.
Knox told Officer Wilson that he and his female passenger were headed to Chattanooga, Tennessee, to attend a funeral. Officer Wilson gave his condolences and asked who had passed away. Knox initially told Officer Wilson that it was a family member, but, when pressed for a name, Knox stated instead that he did not know the deceased’s name and that it was actually a close friend who had passed away.
When asked about his female passenger, Knox explained that he was taking her to Chattanooga to visit with her father, who was suffering from cancer. Officer Wilson then spoke with Knox’s female passenger, who stated that she was traveling to Chattanooga to see her father, who was suffering from Alzheimer’s disease.
At this point, Officer Wilson believed that Knox was engaged in criminal activity. Lieutenant Randy Garrison had arrived on the scene, and Agent Tony Blackwell of the Drug Task Force, who had been- summoned by Officer Wilson, was en route. Officer Wilson continued to probe Knox-regarding his travel plans. Officer Wilson issued Knox his citation and then asked Knox if they could continue to speak in a consensual conversation. Knox consented to prolonging the conversation. Officer Wilson asked Knox if he possessed anything illegal or large sums .of currency, which Knox denied. Officer Wilson then asked for consent to search Knox’s vehicle, but Knox refused to give his consent. Upon hearing Knox decline to give his consent, Agent Blackwell, who had recently arrived, allowed' his canine to circle Knox’s vehicle.
During the search, the canine indicated that it detected the presence of narcotics. In the trunk of the vehicle, the officers recovered a large package in Christmas wrapping paper. Knox stated that the package was a gift and that it contained toys. Knox would not state to whom the package was to be given, nor would he state with, specificity what kind of toys were in the package. Officer Wilson placed the package on the ground along with various other bags and allowed the canine to smell the items. The canine indicated that it detected the presence of narcotics in the package. Upon opening the package, Officer Wilson smelled a *1207 strong odor of marijuana and saw a green, leafy substance wrapped in cellophane.
On appeal, the State argues, in part, that the circuit court abused its discretion by granting Knox’s motion to suppress because Knox was not being detained at the time of the canine search.[1] This Court-agrees.
Initially, this Court notes:
“ ‘ “When evidence is presented ore ten-us to the trial court, the court’s findings of fact based on that evidence are presumed to be correct,” Ex parte Perkins, 646 So.2d 46, 47 (Ala.1994); “[w]e indulge a presumption that the trial court properly ruled on the weight and probative force of the evidence,” Bradley v. State, 494 So.2d 750, 761 (Ala.Crim.App. 1985), aff'd, 494 So.2d 772 (Ala.1986); and we make “ ‘all the reasonable inferences and credibility choices supportive of the decision of the trial court.’ ” Kennedy v. State, 640 So.2d 22, 26 (Ala.Crim.App.1993), quoting Bradley, 494 So.2d at 761. “[A]ny conflicts in the testimony or credibility of witnesses during a suppression hearing is a matter for resolution by the trial court.... Absent a gross abuse of discretion, a trial court’s resolution of [such] conflict[s] should not be reversed on appeal.” Sheely v. State, 629 So.2d 23, 29 (Ala.Crim.App.1993) (citations omitted). However, “ ‘[w]here the evidence before the trial court was undisputed the ore tenus rule is inapplicable, and the [appellate] Court will sit in judgment on the evidence de novo, indulging no presumption in favor of the trial court’s application of the law to those facts.’ ” State v. Hill, 690 So.2d 1201, 1203 (Ala.1996), quoting Stiles v. Brown, 380 So.2d 792, 794 (Ala.1980). ‘““[W]hen the trial court improperly applies the law to the facts, no presumption of correctness exists as to the court’s judgment.” ’ ” Ex parte Jackson, 886 So.2d 155, 159 (Ala.2004), quoting Hill, 690 So.2d at 1203, quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). A trial court’s ultimate legal conclusion on a motion to suppress based on a given set of facts is a question of law that is reviewed de novo on appeal. See State v. Smith, 785 So.2d 1169 (Ala.Crim.App.2000).’ ”
C.B.D. v. State, 90 So.3d 227, 237 (Ala. Crim.App.2011) (quoting State v. Hargett, 935 So.2d 1200, 1203-04 (Ala.Crim.App.2005)). ““““A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision.” ”” ” Byrd v. State, 78 So.3d 445, 450-51 (Ala.Crim.App.2009) (quoting Hodges v. State, 926 So.2d 1060, 1072 (Ala.Crim.App.2005), quoting in turn State v. Jude, 686 So.2d 528, 530 (Ala.Crim.App.1996), quoting in turn Dowdy v. Gilbert Eng’g Co., 372 So.2d 11, 12 (Ala.1979), quoting in turn Premium Serv. Corp. v. Sperry & Hutchinson, Co., 511 F.2d 225 (9th Cir.1975)).
In its order granting Knox’s motion to suppress, the circuit court enumerated nine facts on which Officer Wilson based his reasonable suspicion that Knox was engaged in criminal activity involving drugs:
“1) Knox was from Houston, Texas, and Officer Wilson had been trained that most narcotics traffickers come from *1208 around the border of the southwestern states; 2) that 1-59 northbound is known as a route for narcotic traffic to the east coast; 3) that Knox was driving a rental car rented in the name of another; 4) that the car had a single key in the ignition; 5) that Knox was very nervous; 6) that Knox said he was going to the funeral of a relative, then stated it was the funeral of a friend; 7) that Knox could not provide the name of the deceased; 8) that Knox said he was taking his female passenger to visit her father who had cancer, and the passenger said he was taking her to visit her father who had Alzheimer’s disease, and 9) that Knox refused consent for the car to be searched.”
(C. 11-12.) The circuit court then found that “neither the individual factors relied upon by Officer Wilson nor the totality of those factors provided the officer sufficient reasonable suspicion to detain Knox beyond the point in time when the officer gave Knox the warning citation and told him he was free to go.” (C. 14-15.)
Here, the circuit court analyzed the traffic stop under the standard set forth by the Supreme Court of the United States in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The reliance by the circuit court on Terry was misplaced, however, because Knox consented to prolonging his conversation with Officer Wilson, effectively removing the encounter from Fourth Amendment scrutiny. See Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Under Bostick, the central question is “whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers’ requests or otherwise terminate the encounter.” Bostick, 501 U.S. at 439. “ ‘The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of objective reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?’ ” Miller v. State, 602 So.2d 488, 491 (Ala.Crim.App.1992) (quoting Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991)). “‘[T]he question whether a consent ... was in fact “voluntary” or was a product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.’ ” Miller, 602 So.2d at 491 (quoting Schneckloth v. Bustamante, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). “‘Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a “seizure” has occurred.’ ” Bostick, 501 U.S. at 434 (quoting Terry, 392 U.S. at 19 n. 16).
As noted by the circuit court, Knox was given his citation and then told by Officer Wilson that he was “free to go.” (C. 15.) Officer Wilson’s release of Knox was in accord with § 32-l-^t(a), Ala.Code 1975. See State v. Washington, 623 So.2d 392, 395 (Ala.Crim.App.1993) (“Once the traffic offender signs the UTTC, the arresting officer is to ‘forthwith release him from custody.’ § 32-l-4(a).”). After releasing Knox, Officer Wilson asked Knox if they could speak in “just a consensual conversation,” to which Knox acquiesced. (Supp. R. 10.)
Officer Wilson’s conduct—handing Knox a citation and telling Knox that he was “free to go”—“would have communicated to a reasonable person that the person was ... free to decline [Officer Wilson’s] requests or otherwise terminate the encoun *1209 ter.”[2] Bostick, 501 U.S. at 439. There was no testimony indicating that the officers had blocked Knox’s vehicle or otherwise attempted to physically restrain Knox. Nor was there testimony that the officers had brandished their weapons or had subjected Knox to any threats of force or intimidation. See United States v. Lopez, 911 F.2d 1006, 1010 (5th Cir.1990) (list of specific factors to be considered in the totality of circumstances). Additionally, although Knox’s subjective thoughts are not dispositive of the issue, this Court finds significant the fact that Knox declined consent to search his vehicle. Knox’s declining consent indicates that he was aware that he could say “no” to the officers. Under the totality of the circumstances, this Court holds that Knox’s consent was voluntary. See United States v. Meikle, 407 F.3d 670, 672-74 (4th Cir.2005).
Knox’s voluntary acquiescence to Officer Wilson’s request transformed the encounter into a consensual one, and it was during this consensual encounter when Agent Blackwell allowed his canine to circle Knox’s vehicle. Because the encounter was consensual, Knox was not being detained at the time of the canine search. Additionally, reasonable suspicion was unnecessary to perform the canine search. See Illinois v. Caballes, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005); Seeley v. State, 669 So.2d 209, 212 (Ala.Crim.App.1995). Once the canine in-dicatedon Knox’s vehicle, the officers had probable cause to search Knox’s vehicle. West v. State, 53 So.3d 990, 994 (Ala.Crim.App.2010) (holding that law enforcement had probable cause to search the vehicle based on the canine’s indication that narcotics were present in the vehicle (citing State v. Montgomery, 968 So.2d 543, 552 (Ala.Crim.App.2006))); State v. Black, 987 So.2d 1177, 1180 (Ala.Crim.App.2006) (recognizing the' “automobile exception” to the warrant requirement, which allows law enforcement to search an automobile based on probable cause alone because of the mobility of an automobile (citing Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999))). Accordingly, the circuit court erred in finding that the search of Knox’s vehicle was illegal and in granting Knox’s motion to suppress.
Based on the foregoing, the circuit court’s order is reversed, and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
KELLUM and BURKE, JJ., concur.
JOINER, J., concurs specially, with opinion.
WINDOM, P.J., dissents,, with opinion. ,
WELCH, J., dissents.

. Although the State did not raise this specific argument below, "we review the circuit ' court's application of the law to the facts in this case de novo.” State v. Pollard, 160 So.3d 826, 831 n. 3 (Ala.Crim.App.2013). Because this argument is based on facts "squarely presented to the circuit court, the argument is properly before this Court for review.” Id.

. The circuit court assumed for the purpose of its order, but did not explicitly find, that Knox’s decision to remain after being told he was "free to go” was consensual. (C. 8.)