On Remand from the Alabama Supreme Court

WINDOM, Presiding Judge.
The State of Alabama appeals the circuit court’s decision to suppress evidence of marijuana discovered during a search of Teddy Lee Knox’s vehicle after Knox was stopped for a traffic violation. ■
In State v. Knox, 201 So.3d 1203 (Ala.Crim.App.2014), this Court set out the following facts surrounding the search of Knox’s vehicle:
“On August 9, 2011, Officer Matt Wilson of the Fort Payne Police Department was patrolling Interstate 59 when he encountered a vehicle being driven by Knox. Knox was driving his vehicle at what Officer Wilson considered to be an unusually slow speed. As Officer Wilson was passing Knox’s vehicle, he made eye contact with Knox. Knox appeared startled and maneuvered his vehicle into the emergency lane, where he stopped. Officer Wilson briefly continued down the interstate before stopping his patrol vehicle to wait on Knox to resume driving. After a few minutes, Knox’s vehicle passed Officer Wilson’s. Officer Wilson followed Knox until Knox crossed into another lane of traffic without signaling. *1224 Officer Wilson then initiated a traffic stop.
“Officer Wilson approached the passenger side of Knox’s vehicle. Officer Wilson did not see any contraband in the vehicle, but he did notice .that there was a single key in the ignition—Officer Wilson felt that a single key was suspicious because it suggested that the vehicle was not connected to Knox. Officer Wilson asked Knox for his driver’s license and proof of insurance, and Knox gave Officer Wilson several documents, one of which indicated that Knox was driving a rental vehicle that had not been rented in his name. Officer Wilson described Knox as being very nervous—Knox’s voice and hands were shaking. Knox was allowed out of the vehicle to retrieve his license, which had been issued in Texas, from the trunk of the vehicle. As Officer Wilson drafted a warning citation, he questioned Knox about his travel plans and the female passenger in his vehicle.
“Knox told Officer Wilson that he was from Houston, Texas, which Officer Wilson found to be suspicious because, according to Officer Wilson, ‘most narcotics traffickers come from around the border or -the southwestern states.’ (Supp. R. 7.) Officer Wilson also found it suspicious that Knox was traveling northbound on Interstate 59 because Officer Wilson considered that to be a ■known route of narcotics traffic to the east coast.
“Knox told Officer Wilson that he and his female passenger were headed to Chattanooga, Tennessee, to attend a funeral. Officer Wilson gave his condolences and asked who had passed away. Knox initially told Officer Wilson that it was a family member, but, when pressed for a name, Knox stated instead that he did not know the deceased’s name- and that it was actually a close friend who had passed away.
“When asked about his female passenger, Knox explained that he was taking her to Chattanooga to visit with her father, who was suffering from cancer. Officer Wilson then spoke with Knox’s female passenger, who stated that she was traveling to Chattanooga to see her father, who was suffering from Alzheimer’s disease.
“At this point, Officer Wilson believed that Knox was engaged in criminal activity. Lieutenant Randy Garrison had arrived on the scene, and Agent Tony Blackwell of the Drug Task Force, who had been summoned by Officer Wilson, was en route. Officer Wilson continued to probe Knox regarding his travel plans. Officer Wilson issued Knox his citation and then asked Knox if they could continue to speak in a consensual conversation. Knox consented to prolonging the conversation. Officer' Wilson asked Knox if he possessed anything illegal or large sums of currency, which Knox denied. Officer Wilson then asked for consent to search Knox’s vehicle, but Knox refused to give his consent. Upon hearing Knox decline to give his consent, Agent Blackwell, who had recently arrived, allowed his canine to circle Knox’s vehicle.
“During' the search, the canine indicated that it detected the presence of narcotics. In the trunk of the vehicle, the officers recovered a large package in Christmas wrapping paper. Knox stated that the package was a gift and that it contained toys. Knox would not state to whom the package was to be given, nor would he state with specificity what kind of toys were in the package. Officer Wilson placed the package on the ground along with various other bags and allowed the canine to smell the items. The canine indicated that it de *1225 tected the presence of narcotics in the package. Upon opening the package, Officer Wilson smelled a strong odor of marijuana and saw a green, leafy substance wrapped in cellophane.”
Knox, 201 So.3d at 1206-07.
Following a suppression hearing during which the State presented testimony from the officers involved in the search of Knox’s vehicle, the circuit court issued a detailed order granting Knox’s motion to suppress the marijuana evidence. Specifically, the circuit court found that the officers lacked reasonable suspicion to prolong the traffic stop. On appeal, the State argued that the circuit court erred in granting the motion to suppress because Knox was not being detained at the time of the canine search and, in the alternative, because the officers held a reasonable suspicion to prolong the traffic stop.
In State v. Knox, this Court held that although the State failed to raise the argument that Knox was not being detained at the time of the canine search, the claim was properly before this Court pursuant to this Court’s holding in State v. Pollard, 160 So.3d 826, 831 n. 3 (Ala.Crim.App.2013). Knox, 201 So.3d at 1207 n. 1. This Court then reversed the circuit court’s order, finding that, because the encounter between Knox and the officers was consensual, Knox was not being detained at the time the canine search was executed. Id. at 1209.
Knox appealed this Court’s decision to the Alabama Supreme Court, and in Ex parte Knox, 201 So.3d 1213, 1218 (Ala.2016), the Alabama Supreme Court determined that “[t]he primary focus of the suppression hearing was the existence of reasonable suspicion,” and that the State did not argue at trial that Knox was not being detained at the time of the canine search. The Supreme Court then held that “the State raised a new legal question or issue when it argued for the first time on appeal that Knox was not being detained at the time of the- canine search of his vehicle that yielded the marijuana”; consequently, the argument was not preserved for appellate review. Ex parte Knox, 201 So.3d at 1219. The Supreme Court then reversed this Court’s judgment and remanded the cause to this Court with instructions for this Court to consider whether reasonable suspicion justified Knox’s detention after the warning citation was issued.' Id.
Regarding prolonged traffic stops, this Court has explained:
“Once the traffic offender signs the [Uniform Traffic Ticket and Complaint], the arresting officer is to ‘forthwith release him from custody.’ § 32-l-4(a). The officer may further detain the driver only if he has probable cause to arrest the driver for some other non-traffic offense, see Hawkins v. State, 585 So.2d 154 (Ala.1991), or has a reasonable suspicion of the driver’s involvement in some other criminal activity justifying further detention for investigatory purposes under Terry v. Ohio, see United States v. Tapia, 912 F.2d 1367 (11th Cir.1990).
“‘Reasonable suspicion is a less demanding standard than probable cause.’ Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990). However, reasonable suspicion exists only if the officer has ‘specific, particularized, and articulable reasons indicating that the person [stopped] may be involved in criminal activity,’ Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr.App.1989). ‘To determine whether reasonable suspicion existed for a particular stop, the totality of the circumstances) as known to the officer at the inception of the stop, [or, in this case, at the time of the continued detention,] *1226 must be considered.’ Arnold v. State, 601 So.2d 145, 149 (Ala.Cr.App.1992) (emphasis added). Accord Lamar v. State, 578 So.2d 1382, 1385 (Ala.Cr.App.), cert. denied, 596 So.2d 659 (1991).”
State v. Washington, 623 So.2d 392, 395-96 (Ala.Crim.App.1993).
Considering the totality of the circumstances,. Officer Wilson had reasonable suspicion that criminal activity was afoot so as to .justify- Knox’s continued detention. Knox was traveling from Houston, Texas, on a known drug route at a slow rate of speed. Officer Wilson testified that he had been trained that most narcotics traffickers come from border or southwestern states. Cf. United States v. Mason, 628 F.3d 123, 129 (4th Cir.2010) (recognizing that traveling from a city known for drag distribution on a known drag route is a relevant factor giving rise to reasonable suspicion of criminal activity (citing United States v. Foreman, 369 F.3d 776, 785 (4th Cir.2004))). According to Officer Wilson, as he was passing Knox, Knox “looked at [him] and just looked startled, put both hands on the steering wheel, and he veered over into the emergency lane and pulled off the interstate, and just very erratically pulled off the interstate.” (Supp. R. 4.) See United States v. Ceballos, 719 F.Supp. 119, 125 (E.D.N.Y.1989) (“Evasive driving is [an] indicia of suspicion of drag trafficking.” (citing United States v. Ginsberg, 758 F.2d 823, 826-27 (2d Cir.1985))); see also United States v. Diaz-Juarez, 299 F.3d 1138, 1141 (9th Cir. 2002) (holding that “erratic or evasive driving behavior” is a-relevant factor in determining whether an officer has reasonable suspicion of criminal activity (citing United States v. Brignoni-Ponce, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975))). After Officer Wilson stopped Knox, Knox was “very nervous,” and “[h]is voice was shaking.” (Supp. R. 5.) See Worthy v. State, 91 So.3d 762, 766 (Ala.Crim.App.2011) (explaining that although “nervousness alone may not be sufficient to constitute reasonable suspicion, ... it is a pertinent factor” (citations and quotations omitted)). Knox was driving a car that had been rented in Texas under a third party’s name. See United States v. Williams, 271 F.3d 1262, 1270 (10th Cir. 2001) (holding that a car rented in a third party’s name contributes to a officer’s reasonable suspicion that criminal activity was afoot (citing United States v. Figueroa-Lopez, 125 F.3d 1241, 1244 (9th Cir.1997))). When Officer Wilson asked Knox where he was going, Knox first said he was going to Chattanooga,- Tennessee, for a family member’s funeral, then changed his story and said it was a close friend’s funeral. However, Knox did not know the name of the person who had died. See United States v. Simpson, 609 F.3d 1140, 1150 (10th Cir.2010) (recognizing that “vague, inconsistent or evasive answers with respect to travel plans [are]' supportive of reasonable suspicion”). When asked about the female passenger in the car, Knox said that she was a friend that he was driving to Chattanooga to visit her father who was sick with cancer. The passenger, however, said she was going to visit her father who had Alzheimer’s disease. Further, the passenger did not mention a death or a funeral. See id.; Mason, 628 F.3d at 129 (recognizing that conflicting answers regarding travel plans is an indication of criminal activity).
Based on the totality of the .circumstances, Knox’s behavior created a reasonable suspicion that he was engaged in criminal activity and justified the prolonged traffic stop. Therefore, the circuit court erred in. finding that the prolonged stop rendered the search of the, car illegal and in granting Knox’s motion to suppress.
*1227 For the foregoing reasons, the circuit court’s order is reversed, and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, and BURKE, JJ., concur.
JOINER, J., concurs specially.